Peggy Sasso, on behalf of the appellant, I would like to reserve four minutes, please. You may do so. Just watch the clock. Yes, Your Honor. The government elected to charge my client with theft, not with making a false statement, which means this case can be distilled down to two issues. Was my client entitled to make a claim against his benefits? And if he wasn't entitled, he knew that and did so anyway. The government did not provide evidence on either issue and in fact conceded the ultimate issue in its argument to the jury when it said it didn't know whether my client was entitled to the benefits that he received. If the government doesn't know if my client was entitled to his benefits, it doesn't know that he stole anything. Now, even if we assume that my client knew that his name was Saldana Molina, those were still his benefits. As the government's expert from Social Security. Yes. There's some appeal to your arguments in this case, and I think that comes from the sympathetic fact that he's actually paid into the system for 32 years. But I think the government is right that this is a fairly broad theft statute that also covers theft by false representations. So if you've got a system where you chip in and if you get injured, you get paid out, and it doesn't really matter whether you chipped in under the name Suzy, Joe or otherwise, then I think the government will probably have a problem in this case. But if you've got a system where you chip in and if you're injured, you pay out, but before you pay out, you've got to show us who you are, because we've got to verify that you're a legal resident. And without the appropriate verification, you really don't get paid out. You weren't entitled to chip in in the first place, so you can't really take it out. Now, granted, if you end up proving that you're entitled to that by, for example, changing your status, then you're going to be entitled to take out. But that determination still has to be made before the benefits are taken out. And I think the government is arguing that it's the latter that applies in this case. So how do you deal with that? Well, Your Honor, there's a difference between making a false statement, which would be causing a government actor to act in a way that they wouldn't otherwise have acted. But the issue here is having a legal claim to something. And just because someone is in this country illegally, they still earn their benefits just like anybody else. That's what the government's expert explained. The issue of entitlement is one of timing. So whether or not my client had a legal claim to his benefits depends upon whether he adjusted his status. The government presented absolutely no evidence on that issue and never, ever argued that my client wasn't entitled to his benefits based on anything to do with his legal status. And that would be the only reason that my client would not have been legally entitled. And there just simply wasn't any evidence that he wasn't entitled legally to the property he took. And the government conceded that it didn't know whether he was legally entitled. And they're correct because there was absolutely no evidence with respect to my client's status in this country in 2001. Those are his benefits. The issue is legal entitlement. And that was not established at trial. So if he made a false statement, that simply means that it caused a government actor to act in a way that they wouldn't have acted. And as the government expert testified, she isn't qualified to make a legal determination. She simply, this is a classic case of a material false statement. She would not have paid out the benefits if she hadn't been able to determine his identity. That doesn't mean he wasn't legally entitled to his benefits. And that's the issue in this case. We have to establish that he wasn't legally entitled. And the system is set up so that there are people who pay in but are not entitled to receive benefits even if they otherwise meet the criteria. For example, someone who is a foreign national who is here for a year or two, don't they pay some sort of equivalency amount and they can't get anything out? That may very well be. So I guess the question, so the fact that he paid in does not per se establish that he's entitled to receive the benefits coming the other way. I believe what was established at trial is that the definition of employment for Social Security purposes is any work performed by any individual regardless of their citizenship or their residency. And someone who is in this country illegally and who works under a false Social Security number earns their benefits just like anybody else. There is an issue that has to be assessed whether they are actually entitled to the benefits. And the only reason that they might not be entitled is because they would be in this country illegally. And that just simply wasn't established. Wait. I lost your explanation. Let me see if I understand what you're trying to tell me. If a person does not have lawful status in the United States, they are not entitled to receive benefits. Is that what you're – is that true or false? If they are entitled to earn their benefits, but they're not entitled to claim their benefits. Just answer the question I'm asking. Claim benefits. Okay. So a person who has – who is not – doesn't have lawful status cannot receive benefits regardless of whether they paid in or they haven't paid in. That is correct, Your Honor. And that was not established at trial whether my client actually was lawfully in this country, whether he was a citizen, whether he was lawfully in this country. We simply don't know whether he had a legal entitlement to the benefits he claimed in the government. Well, we know – we know that he wasn't the Saldana Molino born in 1945 in Laredo, Texas, under whose name your client sought the benefits, correct? My client – that is – that is correct. His name was not Saldana Molino. That is correct. But the government has – Congress has exempted from even fraud prosecution someone who fraudulently gets their Social Security number who's in this country illegally and then proceeds to work under that number.  The issue of entitlement – You say Congress has established that in what section and what case? 42 – 42 – I think it's 408 subsection E. 42 U.S.C. 408 subsection E. And someone who is in this country illegally who got their Social Security number through fraudulent means prior to 1990, they are exempt from prosecution for fraud if they work under their Social Security number and then they lawfully adjust their status. But this is not a fraud case. And that's my point. They're exempted from fraud and certainly for the exact same reason. If someone – the issue is whether they are entitled to the benefits. I think Congress has spoken very clearly. Social Security has spoken very clearly. You are entitled to the benefits that you earn in this country when you're here illegally and you're working under a Social Security number. By definition, you got that number fraudulently. That's not the issue. Well, the evidence in this case, Counsel, I think demonstrates that he might have been entitled to the benefits because the government never affirmatively showed that he's actually undocumented. But what the government, I think, is saying and what they did prove is that by using the false name, he deprived the government of the opportunity to investigate as to his legal status. And the question is whether that's material, right? Did the fact that he gave a false name materially affect the decision to award the money in this case? There are big lies and little lies, right? So if you say you're 120 pounds versus 110 pounds, that really doesn't matter in terms of the decision-making process. But if you use a false name, well, that may very well be material. And that's what the government argued to the district court, Judge Ishii, when he came up with the analogy of the bank account. And if you put in under a different name and you take out, the government's response was, well, because the lie as the name is material. So it does sound like a false statement case. I agree with you there. But it doesn't mean that 641 isn't broad enough to cover it. Well, I think it does, because you're assuming the theft. Sure, theft by false pretenses is theft. But you have to back up and establish the theft. And that's what Judge Ishii's point was, and I do not believe he was satisfied, that the government was proving a theft case. You have to have the theft. And regardless of the entitlement, we also have to look at whether my client actually believed that he was taking something to which he wasn't entitled. And I think the evidence is overwhelming that he believed that he was entitled to make a claim against the benefits that he had worked hard to earn. And that's the second element. That's Morissette, and that's La Perota v. United States. My client has to know. And right at the outset of the investigation, he offered up his DNA to be tested to establish that he was entitled to claim the benefits that he claimed, and the government wasn't interested and instead took his Social Security papers away from him. He then spent the next several years arranging meetings with the Social Security investigators to try to get his Social Security papers back. He visited Social Security 11 times trying to establish his entitlement to his benefits that he had earned. I mean, I think a hypothetical might be useful. If we're in a time and a place where a woman cannot serve in the military and I disguise myself as a guy and I get into the military and I have an illustrious career in the military and I do everything I'm supposed to do to earn my benefits, at the end of my career I claim my benefits, still using my false identity. But I fully believe that those are my benefits. I have earned my benefits. Yes, I know I'm using a false name. But whether or not I should have gotten into the military or whether or not my client should have gotten a Social Security number, I earned those benefits and I have absolutely been able to earn them. Isn't this more akin to an insurance policy situation? Let's say you obtain a Federal insurance policy and it requires that you be at least 50 years old to collect insurance and you meet all the other requirements for your insurance, your house is destroyed by a fire or a flood or whatever the Federal government is insuring, probably flood. But you lie in order to obtain those benefits. It's a false statement, but you've also received money that you weren't otherwise entitled to, even if you paid your premiums, in my example. Why isn't it like that and why wouldn't that be theft? You would – the government would have to establish that the individual knew that they were taking something that didn't belong to them. So in your hypothetical, it could be established that the individual knew that if they needed to be 50 years old to make the claim and they made the claim anyway. That's that. But the fact that you paid in doesn't answer the question. And so that seems to be your emphasis. Well, he paid in. And in my example, you would have paid your premiums. And so I guess paying in, I'm having difficulty seeing why paying in equals paying out. Paying in goes to his intent. This is an illiterate Spanish-speaking elderly individual who has done what he believes he needs to do. That's where the paying in comes in. So in your hypothetical, no, paying in itself is not the dispositive issue. It goes to the intent. Did that person know that they weren't entitled to those benefits and they lied about their age? And there was absolutely no – Well, it seems like you're shifting ground because there really – there's the state-of-mind question, but there's also the question of who the money belonged to. And that, I thought, was what you were arguing about, is who the money belonged to. And if he's not entitled to it, it's hard to see why it isn't the government's money. There's two elements to theft under Morissette and Laperota. One is the question of entitlement, which is what I spent the bulk of the morning discussing, but I have now moved into the second element, which is classic Morissette. He has to know that what he's taking isn't his. As Laperota and Morissette both talk about, there are very serious penalties attached to theft and very significant moral condemnation. We need to make sure that the person we're accusing of theft actually knows they're taking property that doesn't belong to them. And there was absolutely no evidence that he knew that he was taking property that didn't belong to him. Counsel, you're down to just about a minute, so you may want to reserve the rest of your time. Thank you, Your Honor. We'll hear from the government. May it please the Court, Counsel. My name is Henry Carbajal. I represent the plaintiffs appellee, the United States, in this case. The fact finder in this case considered the defense arguments of claim of right, lack of knowledge, and intent, and rejected them in the face of the trial evidence. Nothing the defense has presented in their briefing or before Your Honors today meets the standard of review in this case. And for that reason, the government urges the Court to affirm. Going into the... Well, what about Morissette? Obviously, this is a pretty sympathetic case for the appellant in the sense that the appellant paid all of the Social Security taxes that he was required to pay during his working time and, therefore, presumably qualified for benefits, but for his misrepresentation of his identity. But it's more than that, Your Honor. It is starting out the participation of the system was all on the basis of fraud, which is... But this is not... You didn't charge fraud. I'm sorry. You charged theft. Correct. But the participation in the program is on the basis starting out with a misrepresentation, which was in applying for the SS-5 in 1968, it was false information. It was not his name. It was not his parents' name. But to the Social Security Commissioner, does it really matter as long as it's the same name that pays in all the time and gets the benefits at the end? As was demonstrated at trial, it does. From the testimony of Christy Houchon, identity is the first factor of entitlement. That's what she testified to. And you can't get any further in the process unless that identity is verified and established. Well, let me ask you this, counsel. I have conceptual difficulty with 641, the statute that the government chose to prosecute under the facts of this case. Now, had you charged a false statements case and showed that it's material, capable of influencing the decision-maker, you wouldn't have a problem. I'm a naturalized citizen. So for years and years, the Social Security Administration had my name as being different than what is my legal name. Now, let's say something happens. I go into the Social Security office and I apply for benefits. What would happen is, per your experts' testimonies, they would have to sit down, reconcile it, for purposes of ensuring that, yes, this is the person who actually paid in. So it's a procedural thing that the agency would have to take care of. So in this particular case, had Mr. Saldana came in and said, hey, there's a discrepancy with my name, then Social Security would do the same thing and would reconcile  it, and once they make sure that this is the person who paid in and this person had legal status, then presumably they would pay out. Am I correct so far? It depends. I mean, Ms. Huchot did testify about the process when there's, I think the example on that cross-examination was use of a nickname versus your birth name. Right. What she testified to is I would have to sit down and reconcile it. Correct. You could sit down right there with me, explain it, let me see your explanation, let me hear it, show me the documents, tie the two people, for purposes of identity, to make sure that this is the person who contributed all of these years. So had she done that and he was found to have legal status, then there would be a payout under the government's evidence. Correct? If he was found to have legal status. Right. But in this case, did you prove that he did not have legal status? What we showed, Your Honor, at trial, and I reference Exhibit 3G, which is at SCR 510 through 514, is a certified marriage certificate from Mexico showing his true name and his origin, who his legitimate parents were, and where he was from. And what we submitted at trial was that this was the motive for him to get the false identity, to perpetuate it, to apply under identity that wasn't his own, that there was an issue with his legal status, and that's why he had to pose. But an issue is different than proof that he didn't have legal status, because a birth in Mexico, a marriage in Mexico, children in Mexico is interesting, but it doesn't ultimately prove. I mean, it proves that he's not the person, Saldan, the real person. I'm getting lost in the names. It certainly proves that. I have no difficulty with that. But it doesn't necessarily prove that he does not have legal status. Under the false name. I'm sorry. Under any name. It doesn't. The fact that he was born in Mexico doesn't prove that he doesn't now have legal status in the United States, correct? Correct. And then it is. So what is the other than the proof that he was from Mexico and married in Mexico, what is the proof in the record that he does not have legal status in the United States? There is also the – there was the Exhibit 5A as well, which was the – where Mr. Guido was arrested and placed in deportation proceedings. Well, I think you're talking about the evidence that demonstrates that he is not Saldana, that he essentially – I think looking at the evidence in the light most favorable to the government, which we must do, you've shown that he knew at least as of 1974 when he got married that he's not the Saldana that he's represented to Social Security all of these years. But my question relates to my earlier question in Judge Graber's question. Did you have to prove in this case for a 641 theft conviction that he was actually undocumented at the time that he applied for Social Security benefits? Because theft is, in common parlance, taking something that doesn't belong to you. Right? And your expert said that the purpose of verifying an identity is to determine whether somebody has legal status, whether that's the person who paid in all of these years, and if that person did not have legal status, we wouldn't pay out. So there's this procedural mechanism that the agency has to go through. But don't you have to prove that, well, had they followed through in this case, he wouldn't have been entitled to receive benefits because he didn't have legal status? And so, therefore, the lie about the name really matters in this case, right? There can be big lies and little lies, and the lie has to be material. And in this case, it really mattered, it was material, because he's really not entitled to that benefit in the first place. Did you have to prove that in order to secure a 641 conviction? No. Alienage was not an element of the 641. No, but non-entitlement to the money is an element. And so let's say everything in this case is identical to the way it happened, but let's say that he came forward and proved that he actually had legal status in the United States, that he'd been naturalized under his new false name, or under some other name, and he said, well, I just did it because at the beginning, let's say, I was concerned that I wouldn't be able to pay into the system, or I did it because I liked the name better, or whatever. So if everything in this case were identical, except that he had legal status, wouldn't he be entitled to the money? We're not sure, Your Honor, and that's the problem. There is an established procedure in place for Social Security. You're not answering my question because I know we're not sure his status, but my hypothetical is that everything is the same, but we do know his status and it's lawful. So if he is a lawful resident of the United States or a citizen and everything else in the case were exactly the same, would he be entitled to receive those benefits? I'm not sure, Your Honor. Well, take my example. If I go into Social Security and I reconcile my birth name with now my legal name since I was naturalized, I'm assuming that I wouldn't be prosecutable for a 641 theft just because originally the Social Security Administration records started out under a different name, right? So if you demonstrate that you're the person who contributed and that everything matched up, that's not a 641 theft case, is it? No. No, it wouldn't be. But that's kind of the point is that there is an established process. Even people that have legal status, you know, worked under certain social, let's say there's not a question as to legal status, there's still a process that they have to go through and abide by before the government will release those funds. And if they don't, if they circumvent it, if they skip it, if there are other entitlement or eligibility problems other than legal status, then, no, benefits don't get paid out unless things are done the proper way according to how the Social Security Administration has set it up. Well, I come back to my earlier comment that you chose to prosecute on theft, not on fraud. Correct. And it seems to me you have to bear the burdens with the benefits here. It seems if, in fact, as my colleagues have asked, the person might well have been. You say you're not sure. But might well have been entitled because he paid in everything he was supposed to pay, therefore, he should be eligible to receive out the benefit. But you're not, and as Ms. Huchot testified, you're not allowed, even if other eligibility requirements are met, to pose as someone else to get benefits. I can't go under, even if I worked under a certain Social Security Administration. Okay. So, therefore, you bring a fraud case or a mistaken ID case or whatever. Not theft. You can't – it just seems to me that you have a real problem on the theft count. Now, you may prevail on other counts, but in terms of the theft count, I think you had a problem. Well, Your Honor, I mean, the quintessential portion is a theft. I mean, it is the state of mind of the defendant. Now, he knew there were problems. No, the crucial question that we're dealing with is the second element as stated to the jury, which is that the money belonged to the United States rather than his. So, I mean, initially it belongs to the United States, but you have to show that he converted something that didn't belong to him. It's not really a state of mind question. Right. And there is a basis under that process of Social Security by which they will release funds from the U.S. Treasury, from the Social Security Trust Fund. So your argument – let me see if I understand it correctly – is that by utilizing a false name, he deprived the Social Security Administration of the opportunity to investigate eligibility, and that's enough. That's correct. And they do that for everyone. Legal status or no legal status. And so depriving the government of the opportunity to evaluate or determine eligibility is enough for theft because? It's enough for theft, Your Honor, because he's usurping control of those funds, denying the owner, the possessor, the government, who's in control of the funds. He's usurping control of his own funds, in effect. These are funds he paid in. They're not, Your Honor. And as we detailed in our brief, it's not like a bank account where you put in money. You earn credits by which that money going in at present time goes to pay present recipients. By the time you make a claim, it's other people's money pooled in the Social Security Trust Fund. It's not a bank account that you put in and then you wait on and draw on it later. And, you know, part of what he did was a participation in the process at the beginning through false representations. And then he compounded it by coming in and trying to receive those benefits. He knew under that identity he wasn't entitled to. That's why, you know, it wasn't immigration and naturalization that came to talk to him about identity and his benefits. It was the Social Security Administration. But instead of saying, Your Honor gave the example of, you know, coming in and reconciling the difference in the names, instead of doing that, he persisted in the falsehoods. And what that goes to is the state of mind that he knew that they weren't his to draw on because he had got it on the basis of those false representations. And that's what makes it a theft. What happens to the funds that were actually paid in then? Were they refunded to him? No. No, Your Honor. So the government has windfall. I wouldn't call it a windfall, Your Honor. If you're going to participate on the basis of falsehoods, if you're going to procure participation in the system on the basis of falsehoods, then it is fair that those funds be forfeited. I mean, think about how he did it, which was taking someone else's identity over in Texas and then, you know, procuring the ability to be employed and earn credits and then trying to draw on those benefits later. And over the span of 40 years, he's using someone's identity, a real person over in Texas. Well, yes, but he and he stands convicted of identity theft, and that's a completely different matter. But each crime, the government has to prove every element of that particular crime. Yes. That's correct. But I take it your position is that the fact that he uses a false identity means that, and that it's not reconcilable in the way that Judge Wynn was asking, means that the money can never be drawn on by him. Not by him. That's correct. Your second count depends on the first count, correct? It does. It does, Your Honor, because the aggravated identity theft must be done during and in relation to the theft. The felony. And the felony is the 641. Correct. That's the enumerated felony. Thank you, counsel. Thank you. Ms. Sasso, you have some reserve time. Thank you, Your Honor. The elements of theft that the government had to prove beyond a reasonable doubt was that he was not legally entitled to the property he took and that he knew that he was not entitled to the property he took. The government has conceded it doesn't know whether he was entitled to the property he took, and there was no evidence presented that he wasn't entitled under the law to the property he took. But they've also said, in answer to my last question, that if you enter the system under someone else's name, a real person, another person's name, that you never become entitled to the money, separate and apart from whether you have legal status, that if you have stolen an identity, you're out of luck. That is incorrect, Your Honor. The government's expert testified that someone who obtains a Social Security number fraudulently and then proceeds to work under that number earns benefits just like anybody else. The issue goes to their entitlement, and that's a question of timing. And the question is whether that individual adjusted their status. So that's one of timing. They're still there benefits. They still earn them, and that's exactly why Congress has exempted such individual from prosecution for fraud. So they are his benefits. The issue is entitlement, and there was no evidence presented, and it was the government's burden to present that beyond a reasonable doubt, and they didn't do that. And with respect to my client's knowledge, knowledge of a false name is not the same thing as knowing that he wasn't entitled to make a claim against the benefits that he earned. And I go back to my hypothetical. If I was in the military disguised as a man and I earned those benefits and I go and claim them under my false identity, I fully intend that those are my benefits. I don't intend to steal anything. And the government hasn't proven that my client intended to steal the property that was taken if it wasn't, in fact, his. And you're relying primarily on Morrissette? Morrissette and La Perota, I think, is directly on point. That's a case where that individual took food stamp benefits that that individual was not entitled to. And the Supreme Court said, but wait a minute, just because he wasn't entitled to it doesn't mean he knew that. And so he had to know the facts with respect to the regulations under the Food Stamp Act sufficiently to know that he was taking something that didn't belong to him. And that's where the Court emphasized the extreme penalties that go with the theft conviction as opposed to a false statement and the severe moral condemnation that we hold for theft, meaning the government has to prove that not only is someone not entitled to what they took, but that they knew they weren't entitled to what they took and they took it anyway. That's theft. And on this record, there is not evidence to sustain a conviction for theft. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Nguyen